**Stephen BECKER, Plaintiff–Appellant,**

v.

**ILLINOIS REAL ESTATE ADMINIS-
TRATION AND DISCIPLINARY
BOARD, et al., Defendants–Appellees.**

No. 88–2400.

United States Court of Appeals,
Seventh Circuit.

Argued June 13, 1989.
Decided Sept. 25, 1989.

and direct the Department to convene a hearing concerning Becker's real estate license application.

W. Joseph Thesing, Jr., Barry Sullivan, Michael T. Brody, Jerold S. Solovy, Jenner & Block, Stephen Becker, Chicago, Ill., for plaintiff-appellant.

Kathleen T. Kreisel, Karen S. Rosenwinkel, Valerie J. Peiler, Asst. Attys. Gen., Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

CUMMINGS, Circuit Judge.

Stephen Becker, proceeding *pro se,* filed suit against the Illinois Real Estate Administration and Disciplinary Board ("Board") of the Illinois Department of Registration and Education ("Department") seeking damages and injunctive relief for alleged violations of his due process and equal protection rights pursuant to 42 U.S.C. §§ 1981, 1983, and 1985. The district court dismissed his complaint in its entirety for failure to state a claim upon which relief could be granted.

On appeal, this Court affirmed the district court on all grounds except that of procedural due process. *See Becker v. Illinois Real Estate Admin. and Disciplinary Bd.,* No. 88–2400 (7th Cir., Mar. 1, 1989) (unpublished order). Becker received appointed counsel and the parties were directed to submit supplemental briefs addressing that question. For the reasons that follow, we now reverse the district court's dismissal of the due process claim

## I.

Becker, a convicted felon,[1] would like to sell real estate in Illinois. The Illinois Real Estate License Act of 1983 ("Act") sets forth the criteria to be met by an aspiring licensee. ILL.REV.STAT. ch. 111, ¶¶ 5801–5834 (1987). License applications are submitted to the Department which in turn refers the applications to the Board for approval.

Upon completing the required coursework and passing the Department-sponsored licensing exam, Becker submitted his application along with the required licensing fee to the Department in June of 1986. That September, Becker received a letter from the Department notifying him that his application had been denied. The letter advised Becker that it had accepted the Board's recommendation to deny his application because of his criminal record.[2] As noted, Becker then filed suit claiming *inter alia* that the Department's method of disposing of his license application violated his right to due process.

## II.

Initially, we must determine whether Becker has alleged an interest protected by the Fourteenth Amendment's guarantee of due process. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (the requirements of procedur-

---

1. Becker was convicted of grand larceny in the Commonwealth of Virginia and sentenced on January 9, 1973, to a five-year suspended sentence. Three years later, he was convicted of possession of a firearm by a convicted felon and was ordered to serve two years in prison. He was released in 1979. He has not been arrested for any crimes since the 1976 firearms offense.

2. The Department informed Becker that the Board had considered the nature of his conviction, the probation violation and what appeared to be Becker's lack of remorse as evidenced by the probation violation. (Appellant's brief at 6).

al due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of life, liberty and property). Becker advances two theories to support his claim that the Department violated his due process right. First, he contends that he has a constitutionally protected liberty interest in obtaining a real estate sales license. Second, he claims that the Act creates a protected property interest in first-time license applicants. We address these claims in turn.

▪ Liberty interests derive from two sources. They may flow directly from the Fourteenth Amendment or can be created independently by state law. *Kentucky Dep't of Corrections v. Thompson*, — U.S. —, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506. Decades ago, the Supreme Court recognized that the "right to work for a living in the common occupations of the community" is a form of liberty interest originating in the Constitution. *Truax v. Raich*, 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131; *Hampton v. Mow Sun Wong*, 426 U.S. 88, 102–03, n. 23, 96 S.Ct. 1895, 1905, n. 23, 48 L.Ed.2d 495. A state, in regulating eligibility for a particular type of professional employment, cannot "foreclose a range of opportunities in a manner that contravenes due process, and specifically, in a manner that denies the right to a full prior hearing." *Roth*, 408 U.S. at 574, 92 S.Ct. at 2707 (citations omitted); *see also Colaizzi v. Walker*, 812 F.2d 304, 307 (7th Cir.1987) (if a government were to ban a person from a whole category of employment it would be infringing on that individual's liberty of occupation). Thus we must decide whether the business of selling real estate is one of those "common occupations of the community" invoking due process protection.

Several professions have been recognized as constituting "common occupations." These professions include an attorney, *Schware v. Board of Bar Examiners*, 353 U.S. 232, 238–39, 77 S.Ct. 752, 755–56, 1 L.Ed.2d 796, police officer, physician and nurse, *Bigby v. City of Chicago*, 766 F.2d 1053, 1057 (7th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 793, 88 L.Ed.2d 771; psychologist, *Illinois Psychological Ass'n v. Falk*, 818 F.2d 1337, 1344 (7th Cir.1987); and schoolteacher, *Thomas v. Board of Examiners*, 866 F.2d 225, 227 (7th Cir. 1988) (per curiam).[3] In Illinois, individuals seeking entry into these professions typically must meet certain age and schooling requirements. Moreover, they must pass a state-sponsored, occupation-specific exam as part of the application process.[4]

The real estate sales profession is no different. The person desiring to sell real estate in Illinois must meet certain minimum age and schooling requirements. ILL. REV.STAT. ch. 111, ¶ 5811. He or she must enroll in and master certain real estate-oriented courses. *Id.* Upon completing those courses, the licensing candidate must pass the Department-sponsored written examination. *Id.* Only after the licensing candidate has overcome these hurdles may he or she submit a license application.

We conclude that the business of selling real estate, like the other professions previously referenced, falls within the realm of occupations deemed to be "common occupations of the community" and as such is entitled to due process protection. Having reached this conclusion, there is no need to address the issue of whether the Illinois Real Estate License Act itself creates a protected property interest in the initial licensing applicant.

---

**3.** Conversely, in *Scott v. Village of Kewaskum*, 786 F.2d 338 (7th Cir.1986) this Court rejected a tavern owner's claim that the operation of a tavern qualifies as one of the common occupations of the community, concluding that "a transaction that the state may outlaw—as it may ban the operation of taverns—is not a 'common occupation.'" *Id.* at 340–41. Clearly, we are not dealing with such a transaction here.

**4.** *See generally* ILL.REV.STAT. ch. 110A, ¶¶ 701–706 (1985 and 1989 Supp.) (attorneys); ILL.REV.STAT. ch. 111, ¶¶ 4400-1–4400-63 (1989) (physicians); ILL.REV.STAT. ch. 111, ¶¶ 3501–3549 (1989) (nurses); ILL.REV.STAT. ch. 111, ¶¶ 5351–5379 (1989) (clinical psychologists); and ILL.REV.STAT. ch. 122, ¶¶ 21-1–21-26 (1989) (schoolteachers).

Having found a constitutionally protected interest, it is necessary to consider what due process requires to protect that interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494. To decide this question, we look not to state law but to federal law with respect to the United States Constitution. "[M]inimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures it may deem adequate for determining the preconditions to adverse official action." *Id.* at 541, 105 S.Ct. at 1492 (quoting *Vitek v. Jones*, 445 U.S. 480, 491, 100 S.Ct. 1254, 1262, 63 L.Ed.2d 552).

The district court, relying on *Parratt v. Taylor*, 451 U.S. 527, 537–39, 101 S.Ct. 1908, 1913–14, 68 L.Ed.2d 420, analyzed Becker's due process claim in the context of a random and unauthorized state action and concluded that a pre-deprivation hearing was not required. In situations where the state action is completely random, due process will be satisfied so long as the state provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393. In the instant case, the Department was not required by the Act to hold a hearing on Becker's license application and followed its practice in choosing not to do so. Its actions, therefore, cannot be characterized as random and unauthorized. On these facts, *Parratt* is inapplicable.

■ Inherent in due process are the concepts of notice and opportunity to be heard prior to being deprived of a protected interest unless the state's interest in an immediate deprivation outweighs the individual's interest in a predeprivation hearing. *Loudermill*, 470 U.S. at 542, 105 S.Ct. at 1493. Three factors must be weighed in identifying the nature of the process due in a given situation: 1) the nature of the private interest affected by the state action; 2) the risk of an erroneous deprivation together with the value, if any, of the

imposition of additional procedural safeguards; and 3) the state's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18. In assessing the state's interest, it is necessary to account for any fiscal or administrative hardships which would result from the imposition of additional procedural safeguards. *Id.*

Proper application of the *Eldridge* criteria leads to the following results. First, Becker's interest in obtaining a real estate license is obviously substantial given the time and money he has invested in the endeavor. Second, the risk that an erroneous deprivation might occur is likewise substantial given the lack of opportunity afforded an applicant to explain prior criminal misconduct, particularly when that misconduct poses the only bar to obtaining a license. Finally, the Board's interest in licensing honest and trustworthy agents or brokers is substantial. That interest, however, is not so compelling as to justify an immediate deprivation. In fact, the Board's interest in insuring the quality of its licensees might well be advanced by the opportunity to interview applicants prior to making a final decision. Moreover, requiring the Department to hold a pre-deprivation hearing would not impose substantial fiscal or administrative hardships on the Department, a conclusion supported by the Act itself which provides for such a hearing. ILL.REV.STAT. ch. 111, ¶ 5820(a).

Based on the foregoing, it is patent that Becker was entitled to a pre-deprivation hearing. The Department's failure to provide such a hearing violated his right to due process. The Department is therefore directed to convene a hearing concerning Becker's application and eligibility for a real estate sales license at the earliest possible date.

■ One final issue presented by this appeal must be addressed: the form of hearing to be held in connection with Becker's application. He contends that he should be allowed to appear personally be-

 

fore the Department to defend his application. In *Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176, a provision of the Social Security Act required beneficiaries under that Act to return overpayments erroneously issued, unless the particular recipient was found to be "without fault" in accepting the payments. *Id.* at 685, 99 S.Ct. at 2549. To determine "fault," the Secretary was required to evaluate "all pertinent circumstances including the recipient's intelligence ... and physical and mental condition as well as his good faith." *Id.* at 697, 99 S.Ct. at 2555 (citation omitted). The Court concluded that absent personal contact between the recipient and the government official charged with reviewing the case, proper evaluation could not occur since "evaluating fault ... usually requires an assessment of the recipient's credibility, and written submissions [were] particularly inappropriate...." *Id.*

A situation analogous to that facing the *Califano* Court is present here. The information reflected in Becker's license application raises issues relating to his trustworthiness, honesty and integrity. To determine his suitability for the license, the Department must examine the nature of Becker's past criminal conduct and assess whether he has been rehabilitated to such a degree as to warrant his entry into the profession. The Department's ability to judge Becker's credibility personally would be essential to making an informed licensing decision. Accordingly, the Department must allow Becker to appear personally at his application hearing.

In sum, we hold that Becker's pursuit of a real estate agent's license is a liberty interest protected by the Due Process Clause. Further, the Department's failure to hold a hearing concerning Becker's application, prior to rejecting the application, deprived him of that liberty interest without due process of the law. Consequently, the Department must hold a hearing on Becker's application. Finally, he must be provided with the opportunity to participate meaningfully in that hearing.

Judgment reversed with directions to grant appropriate injunctive relief.