## Veit v. North Wales Borough

C.P. of Montgomery County, no. 01-00356.

*Carol Sweeney,* for plaintiff.
*David Truelove,* for defendant.

HODGSON, *J.,* September 14, 2001—Kenneth Veit appeals from the decision of the North Wales Civil Service Commission upholding his termination from the position of chief of police for North Wales Borough.

The parties agreed, in lieu of a hearing, to rest on the notes of testimony generated at the Civil Service Commission hearing. We ordered the parties to file briefs in support of their positions and, subsequently, entertained argument on the issues.

## FINDINGS OF FACT

(1) Veit became employed by the Borough of North Wales in the capacity of chief of police on April 2, 1973. (N.T. p. 573.)

(2) On or about January 25, 1999, Veit took sick leave from his position as a result of knee replacement surgery.

(3) Pursuant to the borough-council form of government, the mayor is the chief executive in charge of the police department. 53 Pa.C.S. §45101 et seq.; 53 Pa.C.S. §46029.

(4) By letter dated May 17, 1999, North Wales Mayor Douglas Ross placed Veit on administrative leave effective immediately. (N.T. p. 540, exhibit V-20.)

(5) On March 10, 1999, Veit was ordered to supply medical records or submit to a physical examination.

(6) By letter dated May 26, 1999, from Mayor Ross to Veit, Veit was suspended without pay. (N.T. p. 542-43, exhibit B-25.)

(7) The May 26, 1999 letter listed the reason for suspension as follows: "I take this action at this time due to your repeated and unjustified refusal to comply with my order that you submit to a physical examination and cooperate fully with the physician who administered the examination. Your refusal to sign the medical release form is contrary to my order to cooperate fully, and therefore, you are suspended for a violation of my direct order." (N.T. p. 543, exhibit B-25.)

(8) The May 26, 1999 letter included the following relevant language regarding Veit's suspension: "You are hereby suspended, without pay, effective immediately, for disobedience of a direct order. Your suspension will remain in effect until the next regularly scheduled meeting of borough council on Tuesday, June 8, 1999. At that time or thereafter, council may suspend you, discharge you, or reduce you in rank, or reinstate you." (N.T. p. 543, exhibit B-25.)

(9) Veit received a second suspension letter from Mayor Ross dated May 27, 1999. (N.T. p. 70, exhibit B-5.)

(10) The May 27, 1999 letter once more advises Kenneth Veit that he has been suspended, without pay, from his position as a North Wales Police Chief.

(11) The May 27, 1999 letter cites that the suspension was a result of "repeated disobedience of orders and neglect of duty in accordance with sections 1190(2) and (4) of the Borough Code of the Commonwealth of Pennsylvania." (Exhibit B-5.)

(12) The May 27, 1999 letter cites the following reasons for Veit's suspension:

"On four separate instances, you were given direct orders from me or my designee that you refused to follow and/or comply with or neglected to comply with.

"On December 11, 1998, you were given verbal and written orders to schedule the DARE program, prepare a detailed monthly incident report, and prepare a community policing plan. You were given specific instructions and timetables for each of these orders and you failed to follow any of the instructions, meet the timetables, or comply with any of these three direct orders. Prior to going out on sick leave, you failed to schedule DARE, provide monthly incident reports or a community policing plan.

"On January 19, 1999, you were informed that the clause 11(b) of the North Wales Police Contract entitled the borough to have you examined by a physician of the borough's choosing to determine if your extended sick

leave was justified. On March 10, 1999, while still out on sick leave, you were ordered to either submit your medical records or submit to a physical examination in accordance with clause 11(b). In your letter of March 19, 1999, you indicated you would not comply with my order. On March 26, 1999, you were again ordered to submit your medical records or submit to a physical examination. You were ordered to comply by April 2, 1999, and you failed to do so.

"On May 17, 1999, you were ordered to submit to a physical examination and fully cooperate with the physician designated by the borough. Although you did appear for and take the physical, you have not signed the medical release necessary for me, as your employer, to receive the results and allow you to return to active duty if you are physically capable of doing so. Your repeated and unjustified refusal to sign the medical release form is contrary to my order to cooperate fully and therefore, is a violation of my direct order."

(13) The May 27, 1999 suspension letter refers to a violation of sections 1190(2) and (4) of the Borough Code of the Commonwealth of Pennsylvania.

(14) Veit was never given a date, time and place to respond to the allegations.

(15) The next regularly scheduled meeting of the North Wales Borough Council was held on June 8, 1999.

(16) The public session of the meeting was preceded by an executive session.

(17) Veit and his attorney were present for a portion of the meeting.

(18) Veit was never addressed at the meeting.

(19) Veit was never given the opportunity to speak or to respond to the allegations contained in the May 26 and May 27, 1999 letters.

(20) At the June 8, 1999 meeting, a motion was made to terminate Veit based upon the charges set forth in Mayor Ross's May 27, 1999 letter.

(21) At the June 8, 1999 meeting, the borough council voted in favor of terminating Veit from his position as chief of police of the North Wales Borough.

(22) Veit was not informed of his right to be heard prior to termination. (N.T. pp. 342-43.)

(23) Veit was not informed of his right to be represented by counsel prior to his termination. (N.T. p. 339.)

(24) The June 9, 1999 letter terminated Veit from his position as chief of police for North Wales Borough.

## DISCUSSION

The court reviewing the matter on appeal must affirm the local agency unless it is determined that constitutional rights were violated, that an error of law was committed, that procedure for the agency was contrary to statute or that a necessary finding of fact was unsupported by substantial evidence. *Appeal of Suspension of McClellan,* 82 Pa. Commw. 75, 475 A.2d 867 (1984). Because we conclude that appellant was denied his constitutional right to a pre-termination hearing, see *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487 (1985), we do not reach the remaining questions of whether the commission committed an er-

ror of law, whether procedure contravened a statute or whether a necessary finding of fact was unsupported by substantial evidence.

In *Cleveland Board of Education v. Loudermill,* the Supreme Court of the United States held that the due process clause of the United States Constitution entitles a public employee to a pre-termination hearing. Commonly referred to as a *"Loudermill* hearing," the hearing "need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his [or her] side of the story." *Gilbert v. Homar,* 520 U.S. 924, 117 S.Ct. 1807 (1997). The purpose of a pre-termination hearing is to assure that there are reasonable grounds to support the suspension without pay. *Loudermill* at 545-46, 105 S.Ct. at 1495. This hearing is to be followed by a more comprehensive post-termination hearing. *Gilbert* at 929, 117 S.Ct. at 1807; *Loudermill,* 470 U.S. at 532, 105 S.Ct. at 1495.

Under certain circumstances, however, not relevant herein, due process does not require the state to provide a hearing prior to the initial deprivation of property.[1] See *Gilbert v. Homar,* 520 U.S. 924, 117 S.Ct. 1807 (1997).

---

1. The *Gilbert* court recognized that there are situations where a state may need to act quickly or where it would be impractical to provide predeprivation process; post deprivation process satisfies the requirements of the due process clause. *Id.* at 930, 117 S.Ct. at 1812. This recognition was made in the context of the court dismissing the lower court's interpretation of *Loudermill* that the due process clause required in all instances a pre-*suspension* hearing. These situations do not exist in the present case.

The court continued, "[i]n determining what process is due, account must be taken of the length and finality of the deprivation,"

Our conclusion that Veit was entitled to a pre-termination hearing stems from our necessary determination that he had a property right in continued employment. Such a right affords Veit constitutional protections such that this right could not be deprived without due process.

Property interests are a product not of the constitution but of state law. *Loudermill* at 538, 105 S.Ct. at 1491. Veit was entitled to retain his position and not be discharged absent "just cause." 71 Pa.C.S. §§741.3(d), 741.807 (2000). "State law restricting discharge of a public employee except 'for cause' supports such an entitlement to continued employment and thereby creates a protectable property interest." *Ballas v. City of Reading,* 2001 WL 73737 (E.D. Pa. January 25, 2001) (referring to *Gilbert* at 928-29, 117 S.Ct. at 1807). Veit clearly had a property right in continued employment and neither party disputes this conclusion.

Due process requires some form of hearing prior to the discharge of an employee who has a property interest in his or her employment. *Loudermill* at 542, 105 S.Ct. at 1493. "The essential requirements of due process are notice and an opportunity to respond. The opportunity to present reasons either in person or in writing why the proposed action should not be taken is a fundamental due process requirement." *Loudermill* at 546, 105 S.Ct. at 1495.

---

distinguishing the situation before it, where the employee faced a temporary suspension, from the situation in *Loudermill,* where the employee faced termination. *Id.*

The need for this hearing "is evident from a balancing of the competing interests at stake. These are the private interests in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination." *Loudermill* at 542-43, 105 S.Ct. at 1493.

The governmental interest in this case does not outweigh Veit's private interest in retaining his employment as police chief. Nor does it justify the risk of an erroneous termination. The underlying charges against Veit stem from his alleged failure to submit to a physical examination and alleged disobedience relative to various other orders handed down from Mayor Ross. This factual scenario is clearly distinguishable from those in *Gilbert,* where the employee, a university police officer, had been arrested on felony drug charges.

As in *Loudermill,* under Pennsylvania law, Veit is entitled to a full administrative hearing before the Civil Service Commission as well as judicial review. However, where the constitution requires a pre-termination hearing, the most fair and thorough post-termination hearing cannot undo the failure to provide such constitutionally mandated proceedings. *Alvin v. Suzuki,* 277 F.3d 107 (3d Pa. 2000).

The hearing should serve as an initial check against erroneous decisions—"a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill* at 545-46, 105 S.Ct. at 1495.

## CONCLUSION

The private interest of Veit in retaining employment and the risk of an erroneous termination outweighed the governmental interest in expeditious removal of an unsatisfactory employee and the avoidance of administrative burden.

Since Veit was not afforded a pre-termination hearing we find that Veit's rights under Amendments V and XIV of the United States Constitution were violated.

## ORDER

And now, September 13, 2001, after review of notes of testimony, argument and consideration of legal memoranda, Veit's petition for appeal and review is granted in that this matter is sent back to the Borough of North Wales for the purpose of affording Veit a pre-termination hearing.

Veit shall be restored to his status as of May 26, 1999; that is, he remains suspended from the borough police force pending the borough's compliance with this order.