977 F.2d 235
 78 Ed. Law Rep. 227
 Paul BRICKNER, Plaintiff-Appellant,
v.
George V. VOINOVICH, Governor; Chester A. Roush; William
L. Phillis; Individually and in Their Official Capacities,
and Their Agents, Employees, Attorneys, Successors in
Office, Assistants and All Persons Acting in Concert and
Cooperation With Them, Defendants-Appellees.
 Nos. 91-4196, 92-3098.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 13, 1992.
Decided Oct. 13, 1992.
Rehearing Denied Dec. 3, 1992.
 
 Paul Brickner, pro se.
 Harlan D. Karp (argued and briefed), Seiker & Furber, Cleveland, Ohio, for plaintiff-appellant.
 Patrick A. Devine (briefed), Christopher M. Culley, Office of the Atty. Gen. of Ohio, Columbus, Ohio, Lauren M. Ross (argued), Columbus, Ohio, for defendants-appellees.
 Before: MERRITT, Chief Judge; MILBURN and GUY, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 This section 1983 case arises from the removal of the plaintiff, a full-time federal official, from his elected seat on the Ohio Board of Education. The governor declared his seat vacant and replaced him. The plaintiff's principal challenge to his removal concerns whether the defendants' actions, which were implemented without a formal predeprivation hearing, violate procedural due process. We hold that adequate state mechanisms existed to provide due process to the plaintiff, and so we affirm the judgment of the District Court.
 
 
 2
 Plaintiff Brickner has been an administrative law judge with the Social Security Administration since 1981. In 1982 Brickner was elected to serve in a state-wide election as a member of the Ohio Board of Education. He requested and received permission from the federal government to serve in this elected, part-time position. He was reelected for a second term in 1988 and subsequently served as vice president and president of the Board.
 
 
 3
 The Ohio statute specifying the qualifications and salary of Board of Education members states that a board member "shall not during his term of office hold any other public position of trust or profit." Ohio Rev.Code § 3301.031 (Baldwin 1988).[1] While serving as the Board President, the plaintiff criticized and reprimanded the State Superintendent of Public Instruction, Walter, for allegations of nepotism and mismanagement of public funds. Soon thereafter another Board member, Shaffer, sharply questioned the plaintiff's entitlement to serve on the Board because of the provisions of § 3301.031 and his position as an ALJ. The application of this statute's "public position of trust" language had never been called into question before. The majority of the board, including Brickner himself, therefore voted to seek an Attorney General opinion to clarify the application of § 3301.031 to a person in Brickner's situation. Brickner himself wrote the letter requesting this advisory opinion to the state Attorney General.
 
 
 4
 The outgoing Attorney General issued an opinion in January 1991. He concluded that an ALJ held a "public position of trust" under the statute and that a board member may not simultaneously serve as an ALJ. See 91 Op.Ohio Att'y Gen. 001 2-5 (1991). Afterwards Superintendent Walter wrote the new Attorney General and asked whether Brickner could remain in office. The Attorney General responded in March 1991 that under Ohio common law, the acceptance by an officer of a second office incompatible with the first was equivalent to "an implied resignation or abandonment." The Attorney General concluded that the plaintiff could be deemed to have vacated his post by operation of law. After receiving this letter Walter wrote the Governor, defendant Voinovich, and asked him to appoint a replacement to Brickner's position within thirty days. The Governor delayed for approximately five months, and the plaintiff continued to serve on the Board until August 1991. In that month, the Governor finally appointed a replacement. Brickner was stricken from the Board's membership roster by defendant Roush, his successor as Board President, after Brickner initiated this suit under 42 U.S.C. § 1983 in federal district court.
 
 
 5
 The plaintiff sought declaratory and injunctive relief, including reinstatement, against the defendants in their individual and official capacities. The District Court dismissed Brickner's suit after a hearing on a preliminary injunction. The court later denied the plaintiff's motions for a new trial and to amend his complaint to incorporate various additional constitutional arguments. This Court has jurisdiction under 28 U.S.C. § 1291.
 
 
 6
 The plaintiff's principal argument on appeal concerns whether his removal from his elected position violated the Due Process Clause by depriving him of property, in the form of his elected office for a term fixed by statute, without affording him an adequate opportunity for a hearing. To trigger this inquiry into due process, three factors must be considered: (1) some substantive right--life, liberty or property--must be at stake; (2) some deprivation of that substantive right must occur; and (3) the deprivation must occur without due process. If the process for the deprivation is adequate, then no due process violation has occurred. See generally Cleveland Board of Education v. Loudermill, 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985); Board of Regents v. Roth, 408 U.S. 564, 569-70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). In Vicory v. Walton, 721 F.2d 1062 (6th Cir.1983), cert. denied, 469 U.S. 834, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984), we explained:
 
 
 7
 Policy considerations do not require a federal hearing in procedural due process cases that can be corrected in state court.... Section 1983 was not meant to supply an exclusive federal remedy for every alleged wrong committed by state officials. Rather, the statute is a remedy for only those wrongs which offend the Constitution's prohibition against property deprivations without procedural due process. Thus we hold that in section 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate. In a procedural due process case under section 1983, the plaintiff must attack the state's corrective procedure as well as the substantive wrong.
 
 
 8
 Vicory, 721 F.2d at 1065-66. Assuming without deciding that a sufficient property interest is present to trigger due process analysis, it is clear to us that the available state procedures provided all the process that was due under Loudermill and our Court's precedents.
 
 
 9
 The essence of due process is that a deprivation of a property or liberty interest must "be preceded by notice and opportunity for hearing appropriate to the nature of the case." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950); see also Loudermill, 470 U.S. at 546, 105 S.Ct. at 1495. What form of hearing is "appropriate" depends in large part upon the timing of the hearing, i.e., whether it is given before or after the deprivation occurs. The Supreme Court has held that, depending on the circumstances, a pre-termination hearing, although necessary, may not need to be elaborate, as long as the plaintiff is entitled to a full hearing with the possibility of judicial review at the post-termination stage. See Loudermill, 470 U.S. at 545-47, 105 S.Ct. at 1495-96. The Supreme Court and this Court have specified that the pre-termination hearing's essential ingredients are oral or written notice, an explanation of the employer's evidence, and an opportunity for an employee to present his side of the story. These essential elements do not require a full evidentiary, adjudicatory hearing, which is the primary function of a posttermination proceedings. Id. at 546, 548, 105 S.Ct. at 1496; Duchesne v. Williams, 849 F.2d 1004, 1006-07 (6th Cir.1988) (en banc ). The full, post-termination adjudicatory hearing serves "to ferret out bias, pretext, deception and corruption" in scrutinizing the decision to discharge or remove a potential plaintiff. Duchesne, 849 F.2d at 1008.
 
 
 10
 In this case, the plaintiff himself, as Board President, made the official request for an Attorney General's advisory opinion concerning his continued ability to serve on the Board. The plaintiff's own letter shows his knowledge of the threat to his further membership on the Board. He clearly had notice of the situation. He had an opportunity to offer any arguments or material relating to the issue which he raised in his letter to the Attorney General. After receiving the new Attorney General's letter in March 1991, the plaintiff was allowed to stay on the Board for approximately five months. No Ohio authority is cited that mandates that the plaintiff could not have instituted on his own an action in state court for a declaratory judgment on the effect of § 3301.031 at some time during these five months. Brickner therefore was on notice of the problem and had a sufficient opportunity to make his position known to satisfy the pre-termination requirements of Duchesne v. Williams, supra.
 
 
 11
 Ohio law specifically provided for post-termination judicial proceedings to review a challenge to one's title to public office in the form of a quo warranto action. See Ohio Rev.Code § 2733.06 (Baldwin 1988). This action was available to both the plaintiff, after he was deprived of his position, and to the state government. See e.g., State v. Staten, 25 Ohio St.2d 107, 54 O.O.2d 235, 267 N.E.2d 122, 124-25 (1971) (noting availability of quo warranto action to state government). Brickner did not bring such an action after the Attorney General opinion was released or after he was removed, nor has he been able to establish that such a proceeding before an impartial state judge would not have afforded him due process after the deprivation occurred. We are therefore satisfied that Ohio's procedures provide adequate opportunities for pre-termination and post-termination hearings in order to meet basic due process requirements under Loudermill, Duchesne and Vicory.
 
 
 12
 The plaintiff also raises several additional constitutional and statutory issues. These claims relate to First and Fourteenth Amendment void-for-vagueness doctrines, the exercise of First Amendment protected speech, the infringement of his constituents' right to vote through his removal, and § 3301.031's violation of the Supremacy Clause and the doctrine of preemption. None of these arguments were pleaded, or adequately raised or preserved in the District Court. Consequently, they are waived on appeal. See generally Brown v. Crowe, 963 F.2d 895, 897-98 (6th Cir.1992); Taft Broadcasting Co. v. United States, 929 F.2d 240, 243-44 (6th Cir.1991); Estate of Quirk v. Commissioner, 928 F.2d 751, 757-59 (6th Cir.1991). We have reviewed the plaintiff's other contentions and find them to be without merit.
 
 
 13
 Accordingly, the judgment of the District Court is AFFIRMED.
 
 
 
 [1]
 The statute reads in pertinent part:
 3301.031 Qualifications and salary of members
 Each member of the state board of education shall be a qualified elector residing in the territory composing the district from which he is elected, and shall be nominated and elected to office as provided by Title XXXV of the revised Code. A member of the board shall not during his term of office hold any other public position of trust or profit, or be an employee or officer of any public or private school, or a public or private college, university, or other institution of higher education....