**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0606n.06
Filed: October 8, 2008

**No. 07-3169**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

HOLLY A. CHANDLER,

    Plaintiff-Appellee,

v.

THE VILLAGE OF CHAGRIN FALLS, et al.,

    Defendant-Appellant.

                                 /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

---

**BEFORE:** COLE and CLAY, Circuit Judges; and Russell, District Judge [*]

    **CLAY, Circuit Judge.** Defendant-Appellant, the Village of Chagrin Falls, appeals from an order entered by the United States District Court for the Northern District of Ohio denying its motion for summary judgment and its renewed motion for a judgment as a matter of law in this 42 U.S.C. § 1983 suit initiated by Plaintiff, Holly Chandler. In her complaint, Chandler alleged that the Village violated her procedural due process rights when it revoked a permit authorizing the construction of a new garage for her home. For the reasons that follow, we **REVERSE** the judgment of the district court.

---

    [*]The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

**BACKGROUND**

The facts of this case are largely undisputed. Plaintiff, Holly Chandler ("Chandler"), is a homeowner and resident of the Village of Chagrin Falls, Ohio ("the Village"). The Village is a small municipality governed by a mayor, "seven members of a Village Council, various committees, commissions and boards as well as Administrative Officials." (J.A. at 28)

In March of 2003, Chandler sought to tear down her garage and construct a larger structure because her garage was "in poor repair" and could not accommodate the size of her sports utility vehicle. (J.A. at 208) The parameters of a permissible size for a garage were outlined in § 1125.04(A)(6) of the Village of Chagrin Falls Codified Ordinances. Section 1125.04(A)(6) stated

> Garages and Other Accessory Buildings. Each residential building shall be served by a garage located on the same lot. Garages and other accessory buildings must be in accordance with the following standards:
> \*\*\*
> (6) No accessory building shall exceed one story. The maximum height above finished grade shall be limited to fifteen feet. The Architectural Review Board may approve a height of up to but not exceeding twenty-two feet for detached garages to allow roof pitches that are architecturally compatible with the main building on that lot.

(J.A. at 237) As noted by the district court, the Architectural Review Board ("ARB") is "responsible for the oversight, review and approval of all architectural building issues that arise within the Village. Chandler is a member of the ARB." (J.A. at 498)

In May of 2003, pursuant to § 1125.04(A)(6), Chandler submitted her plans to the ARB and requested a building permit to authorize the construction of a new garage. According to the plans submitted to the ARB, Chandler's garage was to stand at approximately twenty-two feet and included a permanent interior staircase.

On May 20, 2003, the ARB heard testimony regarding Chandler's garage and approved the proposed structure for up to twenty-two feet.[1] However, the ARB expressed concerns that the garage constituted a two-story structure in violation of the Ordinance because of its interior staircase. Thus, Chandler was required to obtain a variance for the installation of the staircase from the Village Board of Zoning Appeals ("BZA").

On July 7, 2003, the BZA heard Chandler's request for a variance from the Ordinance permitting her to construct a two story structure with a permanent interior staircase. During the hearing, several of Chandler's neighbors objected to the approval of the variance for the garage. According to the BZA meeting minutes, the neighbors "spoke in opposition to the granting of the variance because of the large size of the structure. Another concern was that because plumbing is allowed in accessory structures, the second floor might be used as an office residence." (J.A. at 74) One neighbor also argued that the actions of the ARB were inappropriate because "the roof pitch of the garage is higher than that of the house." (J.A. at 75) The BZA, however, did not pass on the variance request or the concerns raised by Chandler's neighbors but instead remanded the matter to the ARB for an explanation regarding its rationale for approving a structure that exceeded 15 feet. On July 8, 2003, before the ARB could provide the requested explanation, however, Chandler withdrew her variance request and instead planned to install a "pull-down" stair case. (J.A. at 230) On July 14, 2003, with no further action required because the variance request was moot, the Village

---

[1]Chandler did not participate in the deliberations regarding her application for the approval of her garage plans.

Chief Administrative Officer issued a building permit to Chandler. Chandler demolished her garage on the next day and began construction of her new garage.

On July 15, 2003, a neighbor wrote to the Village Administrator to appeal the decision of the ARB authorizing Chandler to construct a new garage. In a letter dated July 16, 2003, the Village Chief Administrative Officer advised Chandler that her neighbor filed an appeal regarding the issuance of her building permit and that the appeal would be heard on August 4, 2003. Chandler was further advised that, because the outcome of the appeal had not yet been determined, she could "proceed with construction at [her] own risk under the building permit . . . issued on July 14, 2003." (J.A. at 393)

On August 4, 2003, the BZA considered the appeal seeking to reverse the ARB's decision to grant a permit to Chandler. According to the meeting minutes, the BZA considered whether the neighbor had standing to file an appeal and whether the appeal was timely filed. Based on two pertinent Village Ordinances, §§ 1111.03 and 1111.02, the BZA answered both questions in the affirmative. The BZA determined that under § 1111.02, which authorized appeals based on "decision[s] made by the Administrator . . . including the . . . granting of permits," the neighbor had standing to appeal. Moreover, it was also determined that the appeal was timely filed under § 1111.03 because it was dated within 30 days of the issuance of the permit by the Administrator. Thus, the BZA determined that it had jurisdiction to consider the actions of both the ARB and the Administrator in issuing a building permit for the twenty-two foot structure. At all relevant hearings and proceedings, Chandler was represented by counsel and objected to any further action by the ARB

or the BZA regarding her building permit. After hearing arguments from both sides, the appeal failed and was forwarded to the Village Council for further review.

On September 8, 2003, the Village Council met and considered the actions of the BZA with respect to the appeal raised by Chandler's neighbors. During the meeting, the Council heard testimony regarding the ARB's authority to approve permits for structures up to twenty-two feet and whether such a discretionary decision was properly reviewable by the Council. The Council did not resolve that question but instead revoked the permit issued by the Administrator and remanded the matter back to the ARB for further consideration. Consistent with the directions of the Council, the Village Administrator issued a stop work order on September 9, 2003. Under the terms of the stop work order, Chandler was permitted to continue "caulking, priming and other weather sealing necessary to protect the elements of the structure so far erected." (J.A. at 385)

On September 16, 2003, the ARB reconsidered the issuance of the permit, clarified its basis for approval and affirmed its May 20, 2003 approval of Chandler's building permit. On September 22, 2003, the Village Council reviewed the ARB's determination but once again remanded the matter back to the ARB because of insufficient notice regarding its meeting to surrounding property owners. On October 6, 2003, the Council and the ARB held a joint meeting to resolve the matter.

On October 6, 2003, apparently frustrated with the protracted permit proceedings, Chandler filed suit against the Village, her neighbors and several Village council members in federal district court alleging a number of federal and state claims. In particular, Chandler asserted that Defendants violated her right to procedural due process and equal protection when it revoked her permit. Chandler also alleged that she was deprived of her right to "protect one's property," her right to

5

"liberty, health, safety, privacy and welfare," and that the permit revocation constituted an unlawful taking of property. (J.A. at 38-39) Approximately one week after the complaint was filed, the Village Council reissued a building permit to Chandler.

Before the district court, the Village moved for summary judgment, arguing, in relevant part, that they were entitled to judgment as a matter of law because the procedures employed to review the permit in question were consistent with municipal ordinances and Ohio law. Although the district court agreed that the Village was entitled to summary judgment with respect to most of Chandler's claims, the court concluded that Chandler raised a disputed issue of material fact with respect to her due process claim.[2] Relying on *Banks v. City of East Cleveland*, 1997 WL 35572 (6th Cir. 1997), the district court found that Chandler could proceed on a theory of due process deprivation based on "the government's failure to follow its own ordinances or regulations . . . ." (J.A. at 505)

Following a trial, the jury found that the Village violated Chandler's due process rights and awarded her $10,000 in damages. After judgment in favor of Chandler was entered by the district court, the Village filed a motion for a judgment as a matter of law, and in the alternative, a new trial. Both motions were denied. Chandler also sought, and was awarded, $132,733.33 in legal fees, plus costs and expenses, as the prevailing party pursuant to 42 U.S.C. § 1988. This timely appeal followed.

---

[2]The district court also dismissed Chandler's claims against her neighbors and the Village councilpersons.

## DISCUSSION

### I. Procedural Due Process

#### A. Preservation of the Issue

Chandler argues that the Village did not properly preserve this issue for appeal because it has framed the legal issue before this Court differently than the argument advanced before the district court.[3] Before the district court, the Village defended against Chandler's due process allegation by arguing that it did not violate its own ordinances when it considered her neighbor's appeal of the July 14, 2003 building permit. Before this Court, however, the Village argues that even if it did violate its ordinances, it did not violate Chandler's due process rights inasmuch as she did not have a protected property interest and was ultimately provided notice and an opportunity to be heard regarding the issuance of her permit. Thus, Chandler contends, the Village has waived the argument.

Chandler cites *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543 (6th Cir. 2006), in support of this contention. *Liberte Capital Group*, however, is inapposite. In *Liberte Capital Group*, this Court refused to consider a due process claim raised by a party for the first time on appeal. *Id.* at 556. In the instant case, the sole issue before the district court concerned procedural due process and whether Chandler had established the requisite elements necessary to prevail. Although the Village has changed its framing of the argument, this does not undermine the basic fact

---

[3]Chandler also argues that this Court lacks jurisdiction over the denial of summary judgment because the district court's order denying summary judgment was not specifically referenced in the Village's notice of appeal. We disagree. It is well established that "an appeal from a final judgment draws into question all prior non-final rulings and orders." *Crawford v. Roane*, 53 F.3d 750, 752 (6th Cir. 1995). Here, the district court entered a final judgment after the jury trial concluded and attorney's fees were awarded. Thus, this Court has jurisdiction to consider the Village's appeal of the denial of summary judgment.

that it challenged Chandler's due process claim before the district court by asserting that Chandler was afforded due process as required by its ordinances and by the Constitution. Thus, this issue is properly before this Court.

## B.    Standard of Review

This Court reviews a district court's denial of summary judgment *de novo*. *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1176 (6th Cir. 1996). Summary judgment is appropriate if, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As the moving party, the Village bears the burden of showing the absence of a genuine issue of material fact as to at least one essential element on each of Chandler's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Chandler, as the non-moving party, must then present sufficient evidence from which a jury could reasonably find for her. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). This Court must then determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In making this determination, this Court must draw all reasonable inferences in favor of Chandler. *See Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997).

Similarly, this Court "review[s] a district court's denial of a Rule 50(b) motion *de novo*, applying the same deferential standard as the district court: 'The motion may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue

of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party.'" *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007) (quoting *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir.2001)). "Neither the district court nor the reviewing court may reweigh the evidence or assess the credibility of witnesses." *Gray*, 263 F.3d at 600. "For [the Village] to succeed, it must overcome the substantial deference owed a jury verdict." *Radvansky*, 496 F.3d at 614.

## C. Analysis

On appeal, the Village contends that the district court erred as a matter of law in denying its motions for summary judgment and judgment as a matter of law. First, the Village contends that the district court erroneously determined that Chandler presented sufficient evidence of a protected property interest in the building permit. Second, even if Chandler had established a protected property interest, the Village contends that Chandler did not establish that the procedure employed by the Village in reviewing the building permit ran afoul of Chandler's procedural due process rights. We examine each point of contention in turn.

The Fourteenth Amendment provides that a State may not "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend XIV § 2. Indeed, "the Due Process Clause provides that certain substantive rights–life, liberty, and property–cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). *See also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) (noting that the Due Process Clause "require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the

case"). Thus, to establish a procedural due process claim pursuant to § 1983, Chandler must establish three elements: (1) that she has a life, liberty, or property interest protected by the Due Process Clause; (2) that she was deprived of this protected interest within the meaning of the Due Process Clause; and (3) that the state did not afford her adequate procedural rights prior to depriving her of her protected interest. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

### 1.        Protected Property Interest and Deprivation of Interest

As a threshold matter, to establish a cognizable claim of a violation of procedural due process, Chandler must establish that she possessed a protected property interest. *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). "Only after identifying such a right do[es this Court] continue to consider whether the deprivation of that interest contravened the notions of due process." *Wojcik v. City of Romulus*, 257 F.3d 600, 609 (6th Cir. 2001). "Even though individuals often claim property interests under various provisions of the Constitution, such interests are not created by the Constitution; nor may individuals manufacture a property interest." *Id.* Rather, "[r]esolution of the federal issue begins . . . with a determination of what it is that state law provides." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 757 (2005). "'To have a property interest in a benefit, a person must clearly have more than an abstract need or desire' and 'more than a unilateral expectation to it.'" *Id.* at 756 (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).

In the instant case, the parties suggest two sources for Chandler's property interest: the Village's procedure for evaluating requests for building permits and the building permit itself. Of the two possible sources for the property interest at stake, only the latter is cognizable. This Court

has held that processes mandated by municipal ordinances or state law are insufficient to establish a property interest. *See*, *e.g.*, *Richardson v. Twp. of Brady*, 218 F.3d 508, (6th Cir. 2000). *See also Olim v. Wakinekona*, 461 U.S. 238, 250-51 (1983). Indeed, as the Supreme Court noted in *Loudermill*, "'[p]roperty' cannot be defined by the procedures provided for its deprivation any more than can life or liberty." 470 U.S. at 541.

Nevertheless, we find that Chandler has a protected property interest in the building permit issued to her by the Village Administrator. On July 14, 2003, the Village Administrator issued a building permit to Chandler which authorized her to demolish her existing garage and construct a new garage as approved by the ARB. This Court has held that the holder of a building or zoning permit has a constitutionally protected interest and is therefore entitled to proper proceedings prior to a final determination regarding revocation. *See Tri-Corp Management Co. v. Praznik*, 33 F. App'x 742, 747-48 (6th Cir. 2002) (unpublished). Contrary to the Village's assertions, it does not appear that the permit issued was conditional or that the Administrator had the discretion to revoke or deny the permit absent the direction of the ARB. *See Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 462 (1989) (noting that "a State creates a protected liberty interest by placing substantive limitations on official discretion."). *Cf. Town of Castle Rock, Colo.*, 545 U.S. at 756 ("Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion."); *Silver v. Franklin Township Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992) (finding that plaintiff did not have a protected property interest in a

conditional zoning certificate).   Thus, Chandler had a protected property interest in the building permit once it was issued by the Administrator.[4]

### 2.        Procedural Rights Prior to Deprivation of Property Interest

"[O]nce it is determined that the Due Process Clause applies, the question remains what process is due.   The answer to that question is not to be found in the [Village ordinance]. " *Loudermill*, 470 U.S. at 541.   Rather, the Constitution defines what procedures are sufficient to satisfy due process.   *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (noting that to determine whether a constitutional violation occurred, this Court's "task is limited to deciding the minimum requirements of due process").   In interpreting the constitutional requirements of due process, the Supreme Court has held that the hallmark of due process is that a deprivation of a property interest must be "preceded by notice and opportunity for hearing appropriate to the nature of the case." *Loudermill*, 470 U.S. at 542 (quoting *Mullane* , 339 U.S. 306, 313 (1950)); *Matthews*, 424 U.S. 319, 333 (1976) (noting that the Supreme Court "consistently has held that some form of hearing is

---

[4]The Village argues that Chandler's permit was conditional because she took the permit subject to the rules and regulations established by the Village, including appellate procedures.  This argument is wholly without merit.  First, the building permit was issued prior to the letter of appeal written by Chandler's neighbor and there was no indication that the permit was conditional at the time it was issued.  Second, the Village cites no authority for the proposition that oversight or regulation negates a property interest in a license or permit.  Were this Court to adopt such a rule, a whole class of regulated benefits, licenses and permits would be excluded from the protection of the Due Process Clause.  Moreover, this directly contravenes the prior precedent of this court finding that holders of liquor licenses have a property interest in such licenses, despite the fact that liquor licenses are pervasively regulated by most states. *See*, *e.g.*, *Wojcik*, 257 F.3d at 609 (observing that this Court has recognized that the holder of a liquor license has a constitutionally protected interest); *George-Khouri Family Ltd. Partnership v. Ohio Dept. of Liquor Control*, No. 04-3782, 2005 WL 1285677, at *5 (6th Cir. 2005) (unpublished) (citing *Brookpark Entm't, Inc. v. Taft, 951* F.2d 710, 716 (6th Cir. 1991)).

required before an individual is finally deprived of a property interest"). In evaluating whether a particular process comports with the requirements of due process, this Court must weigh a number of factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Id.* at 335. "Applying this test, the Court has usually held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "In some circumstances, however, the Court has held that a statutory provision for a post-deprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Id.* at 128.

The Village asserts that the district court, in denying their motion for summary judgment, erroneously concluded that the violation of local ordinances that establish the procedure for the issuance and review of building permits could constitute a violation of due process. Based on this erroneous conclusion, the Village contends that the district court improperly found that Chandler had established a genuine issue of material fact for trial and therefore denied its motion for summary judgment. We agree.

Before the district court, Chandler vociferously contended that the Village's violation of its permit review ordinances constituted a violation of her Fourteenth Amendment procedural due process rights. To overcome summary judgment and the Village's motion for judgment notwithstanding the verdict, Chandler argued that § 1125.04(A)(6) did not allow for further review

13

of the ARB's decision to approve her construction plans, either by the BZA or the Village Council.

Additionally, Chandler argued that § 1111.02[5] of the Village's Codified Ordinances did not permit

appeals from decisions made by the ARB, but rather allowed for appeals from decisions made by an

Administrator or an Administrative Officer. Lastly, Chandler asserted that the Village lacked

authority to remand the matter of her permit back to the ARB for further consideration under §

1111.11[6]. (Chandler Br. at 32-36) The Village, although maintaining that it complied with §§

1125.04(A)(6), 1111.02 and 1111.11 in entertaining the appeal of Chandler's permit, contends that

whether it violated its ordinances is irrelevant to the constitutional due process inquiry. Rather, it

---

[5]Section 1111.02 of the Village Ordinances provides, in relevant part, that:

The Board of Zoning appeals shall adopt such rules and regulations, provided they are not in conflict with this Zoning Code or other ordinances of the Village, as may be necessary to carry into effect the powers and jurisdiction conferred upon it as follows:

(a)     To hear appeals on decisions made by the Administrator, or by any administrative officer on matters relating to this Zoning Code for relief from any order, requirement, decision or determination, including the refusal, granting or revocation of permits, and may thence decide appeals by reversing or affirming, wholly or in part, or modifying such order, requirement, decision or determination.

(J.A. at 96)

[6]Section 1111.11 provides authority for the Village Council to review the decisions of the BZA:

Following a decision by the Board of Zoning appeals, each case shall be referred to Council. After reviewing the Board's decision, Council may confirm, amend or reverse a decision by a majority vote of its membership. Immediately following Council's decision, record of such decision, including notice of the expiration date of the proposed variance, shall be mailed to the applicant.

(J.A. at 99)

contends, the dispositive question is whether the actual process employed in reviewing Chandler's permit comported with the minimum constitutional protections required by due process.

Indeed, it appears that the Village's position is supported by long standing Supreme Court precedent. In *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), the Supreme Court noted that the question regarding "what process is due" is not answered by state law or local ordinances but by constitutional benchmarks. *Id.* at 541-42. In *DePiero v. City of Macedonia*, 180 F.3d 770, 788 (6th Cir. 1999), and *Eaton v. Charter Twp. of Emmett*, No. 06-1542, 2008 WL 78051 (6th Cir. 2008), this Court applied *Lourdermill* to find that violations of state law did not suffice to establish a due process violation. In *DePiero*, this Court held that the "[f]ailure to comply with state law does not . . . automatically translate into a deprivation of procedural due process under the United States Constitution. To satisfy due process under the Constitution, notice must be 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections,' and 'must afford a reasonable time for those interested to make their appearance.'" *Id.* at 788 (quoting *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950)).

Similarly, in *Eaton*, a panel of this Court rejected a plaintiff's contention that a district court was obliged to instruct a jury that a municipality's failure to follow its own notice and hearing ordinances constituted a violation of due process. Instead, this Court held that "[t]he requirements of procedural due process are measured against constitutional standards. Thus, a violation of [a local] ordinance violates the Due Process Clause to the extent that the procedures afforded appellants were also constitutionally deficient." *Id.* at *4.

Although the violation of the Village ordinances may not itself violate procedural due process, we must examine the actual process applied during the review of Chandler's permit to determine if it afforded her meaningful "notice and opportunity for hearing appropriate to the nature of the case." *Loudermill*, 470 U.S. at 542. In the instant case, we find that the district court erred in denying summary judgment or a judgment notwithstanding the verdict to the Village inasmuch as Chandler was provided constitutionally adequate pre- and post-deprivation notice and opportunity to be heard. On appeal, Chandler does not contend that the processes provided by the Village were inadequate to meet the minimum constitutional requirements of due process or that additional procedures were required under the test established by the Supreme Court in *Matthews*. Here, Chandler was given constitutionally adequate notice and opportunity to be heard both before and after her permit was revoked by the Village Council in September of 2003. At all pertinent hearings, Chandler was represented by counsel and expressed her opposition to her neighbor's appeal. Even assuming all of the facts alleged by Chandler to be true, that in fact the Village violated its ordinances and that she was required to expend time and money to secure her building permit, she has not established, nor does she argue, that process afforded her was insufficient to meet the constitutional mandates of due process. Rather, like *Depiero* and *Eaton*, the sole basis of Chandler's due process claim is that the Village failed to comply with its own ordinances. Like *Depiero* and *Eaton*, such a basis is insufficient to establish that the Village provided insufficient procedural due process when Chandler was otherwise provided notice and an opportunity to be heard. *See Kratt v. Garvey*, 342 F.3d 475, 485 (6th Cir. 2003) (finding that a pilot was provided adequate procedural due process prior to the suspension of his license where he was provided "notice and an opportunity

16

for a pre-revocation evidentiary hearing on the record"); *Broady v. City of Mason*, 250 F.3d 432, 437-38 (6th Cir. 2001) (finding that plaintiffs challenging the grant of a special use permit to a hair salon were afforded meaningful notice and opportunity to be heard, despite city's failure to follow all internal procedures, inasmuch as the plaintiffs were noticed of meetings and had an opportunity to voice their objections). *See also 3883 Connecticut LCC v. District of Columbia*, 336 F.3d 1068, 1074-75 (D.C. Cir. 2003) (finding that the District's issuance of a stop work order did not violate procedural due process where building permit holder was entitled to challenge the order under an "appeals process with three levels of review").

Had Chandler raised a substantive due process claim, perhaps our analysis would be different. In the context of substantive due process, "governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed . . . ." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992); *see also Zinnermon*, 494 U.S. at 125 ("[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them."). In the context of zoning and land use determinations, we have held that substantive due process protects against "arbitrary or capricious" action by a state either by legislative or administrative action . . . ." *Id.* To prevail under the "arbitrary or capricious" standard, a litigant must show "that there is no rational basis for the administrative decision." *Id*. at 1221. It certainly appears that the Village Council lacked a rational basis for subjecting Chandler to numerous hearings and rescinding her building permit. The Village Council rescinded Chandler's permit despite the fact that the matter had been approved by the ARB with an accompanying rationale on at least two

occasions and despite the fact that the Village Council had no new information regarding Chandler's compliance with the Village ordinance. Nevertheless, Chandler has not raised a substantive due process claim on appeal and we must therefore rest our disposition on the merits of her procedural due process claim. *See United States v. Hayes*, 218 F.3d 615, 620 (6th Cir. 2000) (noting that this Court will not entertain issues raised for the first time on appeal).

As noted above, Chandler has not demonstrated that she received constitutionally inadequate notice or opportunity to be heard regarding the appeal of the issuance of her building permit. Thus, we find that the Village is entitled to judgment as a matter of law with respect to Chandler's procedural due process claim. Additionally, inasmuch as Chandler cannot be deemed a prevailing party in this matter, she is not entitled to attorney's fees pursuant to 42 U.S.C. § 1988.

## CONCLUSION

For the reasons stated above, we **REVERSE** the judgment of the district court.