NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0429n.06
No. 13-4054

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| FRANK E. MCKENNA, | ) | |
| | ) | **FILED**<br>Jun 13, 2014<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ON APPEAL FROM THE** |
| BOWLING GREEN STATE UNIVERSITY; | ) | **UNITED STATES DISTRICT** |
| BOWLING GREEN STATE UNIVERSITY | ) | **COURT FOR THE** |
| BOARD OF TRUSTEES; SIMON MORGAN- | ) | **NORTHERN DISTRICT OF** |
| RUSSELL, | ) | **OHIO** |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: NORRIS, COLE, and GIBBONS, Circuit Judges.

**GIBBONS, Circuit Judge**. Frank McKenna was a tenured professor in Bowling Green State University's Department of Political Science. In January 2010, Bowling Green terminated McKenna's employment contract, fired him for cause, and revoked his tenure. McKenna sued Bowling Green, Bowling Green's Board of Trustees, and Simon Morgan-Russell, in his official and individual capacities, under 42 U.S.C. § 1983, alleging that defendants violated his right to procedural and substantive due process. The district court dismissed McKenna's substantive due process claim against all defendants and dismissed McKenna's procedural due process claim against Bowling Green, its Board of Trustees, and Morgan-Russell in his official capacity. The district court then granted summary judgment to Morgan-Russell in his individual capacity on

McKenna's procedural due process claim.  McKenna appeals.  For the following reasons, we affirm.

## I.

In 1982, Bowling Green hired McKenna as an instructor in the Department of Political Science.  McKenna became an Assistant Professor in 1984 and achieved tenure as an Associate Professor in 1989.  The first ten years of McKenna's employment were largely uneventful.  But starting in 1993, McKenna frequently cancelled class, refused to hold regular office hours, submitted final grades late, and rarely attended faculty or committee meetings.  McKenna attributes most of these deficiencies to various health issues.

After investigating McKenna's performance issues, Bowling Green suspended McKenna without pay for the 2008–2009 academic year with notice that he would be fired if he continued to neglect his professional duties.  McKenna filed a charge of discrimination with the Ohio Civil Rights Commission alleging that Bowling Green violated the Americans with Disabilities Act by failing to provide him with reasonable accommodations for his illnesses.  McKenna and Bowling Green eventually settled this claim.  Bowling Green allowed McKenna to return for the spring 2009 semester, and McKenna agreed to abide by an addendum to his 2008–2009 faculty appointment letter.  The addendum identified a list of expectations for McKenna's conduct upon his return.  The addendum also provided:

> Dr. McKenna's compliance with the terms and conditions set forth in Section 2.0 shall be reasonably determined and decided by a panel of three faculty members, one who will be selected by the Dean, one who will be selected by the Chair, and one who will be selected by Dr. McKenna.  Should it be determined by the panel that Dr. McKenna has failed to comply with the terms and conditions as hereinabove set forth Dr. McKenna shall be subject to further disciplinary action up to and including a one year suspension without pay, or, termination and revocation of tenure.  Any termination or revocation of tenure shall be undertaken consistent with the procedures prescribed in the Academic Charter.

The parties agree that McKenna complied with the terms of the addendum during the spring 2009 semester.

In summer 2009, the start of the 2009–2010 academic year, McKenna taught an online political science class. Halfway through the course, a student complained that, among other things, McKenna "had not been online for roughly three weeks [and] had not returned any work." The students "attempted to contact Dr. McKenna . . . but no one received a response." A student's mother also complained to the Office of Admission that McKenna was nonresponsive. The Chair of the Political Science Department, Neal Jesse, talked to McKenna about these complaints. McKenna responded that he had been out of town and was having technical difficulties with his computer and online software.

Following this conversation, the Chair wrote Simon Morgan-Russell, Dean of the College of Arts and Sciences, a memorandum about the complaints and recommended that the College of Arts and Sciences impanel a committee as outlined in the addendum. McKenna was copied on this memorandum. On September 10, 2009, Morgan-Russell notified McKenna that he was "activat[ing] the procedure outlined in Section 3.0 of your Settlement Agreement." Morgan-Russell noted the two student complaints. He also reiterated Jesse's concern that these complaints "may be seen as a failure to meet the obligations of the Settlement Agreement." Morgan-Russell then wrote to the Department, copying McKenna, and asked for the committee to be formed.

The committee met three times "to investigate questions raised about Dr. McKenna's compliance with the terms and conditions set forth in the addendum to his 2008–2009 faculty appointment letter." The committee interviewed Jesse, McKenna, and a Technology Projects Specialist. The committee also reviewed the online software's user statistics, the course

syllabus, and 321 emails provided by McKenna. After considering this evidence, the committee concluded that "there remain four periods of time . . . totaling 54 days, where [McKenna] did not respond to student emails received by him." The committee found McKenna's explanations for his failure implausible.

After reviewing the committee's report, Morgan-Russell notified McKenna that he was seeking termination of McKenna's contract and revocation of his tenure. In the letter, Morgan-Russell quoted Jesse's initial summary of the students' complaints as well as Jesse's personal concerns with McKenna's performance. He also attached the committee's report and provided a bulleted summary. Bowling Green then terminated McKenna's contract, dismissed him for cause, and revoked his tenure.

On January 28, 2010, McKenna, through counsel, sent a formal grievance petition to Bowling Green's Faculty Personnel Conciliation Committee (FPCC). After rejecting his initial grievance for failure to follow the proper procedures, the FPCC accepted McKenna's amended grievance in April. On September 2nd, McKenna asked that the FPCC impanel a Hearing Board to continue the grievance process. Under the Academic Charter, a Hearing Board should have been impaneled by September 12th—within ten class days of McKenna's request. But by the end of September, the FPCC had only identified the Chair and Vice Chair. The Hearing Board was not selected until mid-November.

In anticipation of the hearing, McKenna submitted his written evidence and list of witnesses in December. Morgan-Russell submitted his evidence, including evidence concerning pre-summer 2009 discipline and performance issues, in January 2011. The FPCC then set the hearing for March 24, 2011.

Ten days before the hearing, McKenna's counsel wrote to the Chair of the FPCC about "a couple specific due process concerns [McKenna had] related to the upcoming hearing." Specifically, McKenna asked that, pursuant to the Academic Charter, he be allowed to designate a faculty member and licensed attorney to try the case on his behalf. McKenna also objected to several of Morgan-Russell's designated witnesses and exhibits. In response, the FPCC cancelled the March hearing to consult with Bowling Green's counsel. The FPCC told McKenna that "scheduling in the month of April can be problematic, given the demands of course exams, end-of-the year reports and the like." McKenna "reluctantly agree[d] to such a delay," but "insist[ed] that the matter be rescheduled *before* April 29th when the FPCC officially suspends its activities for the summer." McKenna reiterated that "the longer this grievance languishes, the less likely students whom Dr. McKenna has identified as potential witnesses will be available to testify at the Hearing Board session as they scatter following graduation or otherwise leave the University."

The grievance process stalled. At the beginning of the fall 2011 semester and after several inquiring letters from McKenna's counsel, the FPCC contacted McKenna and Morgan-Russell and conveyed its "wish to proceed with the hearing board for this case as expeditiously as possible."

Three months later, the FPCC circulated a revised list of names for the Hearing Board. Morgan-Russell wrote privately to the FPCC challenging one of the members:

> As you likely know, an important component of the Frank McKenna case is that A&S conducted two investigations according to our longstanding practice of having a faculty committee consider whether allegations made in complaints are sustainable—or not. Last year, we asked Brad Clark to serve as a member of a committee that considered some concerns expressed about a faculty member in the School of Art. Mr. Clark agreed to serve, but his work on the committee made it clear to us that he had little to no confidence in the process that the College follows, and, in fact, he raised sufficient concern that the process would

deal with the complaint fairly (i.e. that the College had already made up its "mind," effectively rendering the committee's work a sham) that the individuals who had raised the concern chose to withdraw their formal complaint, causing the investigation to stall and fail. . . . I am concerned that Mr. Clark's understanding of the work of A&S investigation committees based on this negative experience might have an impact on the grievance. I would prefer that he not serve on this particular committee.

The FPCC agreed and removed Clark from the Hearing Board. A week later, the FPCC told McKenna's faculty advisor that "the FPCC-EC considered and upheld the challenge of a hearing board member by the respondent in this case. . . . [and] a new board roaster will be publicized to both sides in short order." No further information was given.

McKenna filed this action on January 3, 2012, demanding, among other things, a post-termination hearing. After numerous communication difficulties and scheduling issues, the hearing was finally set for April 19, 2012. The grievance hearing went forward as scheduled. It lasted three hours and fifteen minutes. McKenna appeared with counsel and his chosen faculty advisor. McKenna's advisor presented an opening statement and questioned McKenna. Morgan-Russell called Jesse and the faculty members who investigated McKenna's actions during his summer 2009 class. McKenna's advisor cross-examined these witnesses, and McKenna delivered his own closing statement.

The Hearing Board upheld the termination of McKenna's contract and the revocation of his tenure on May 2, 2012. It determined that McKenna's performance "over time along with the progressive disciplinary actions taken by [Morgan-Russell], or his predecessors, justified revocation of tenure and dismissal from the University." The Hearing Board also found that "the addendum was in effect during the relevant time period" because it was "just one step in a series of steps of progressive discipline applied to [McKenna] and therefore its language and intent is not limited to the 2008-2009 contract year."

After the hearing, McKenna continued with this lawsuit, alleging that defendants (1) violated his right to procedural due process; (2) violated his right to substantive due process; and (3) breached his employment contract. He requested money damages and injunctive and declaratory relief.

Defendants moved for judgment on the pleadings, which the district court granted in part. The district court dismissed "any procedural due process claims for monetary damages against [Bowling Green], the Board of Trustees, and Dean Morgan-Russell in his official capacity" on the basis of the Eleventh Amendment. The district court then dismissed McKenna's substantive due process claims against all defendants for failure to state a claim upon which relief could be granted. The district court also dismissed McKenna's contract claims.

Morgan-Russell, in his individual capacity, moved for summary judgment on McKenna's procedural due process claim, arguing that he did not violate McKenna's procedural due process rights and that, regardless, he was entitled to qualified immunity. The district court granted Morgan-Russell's motion. McKenna now appeals.

**II.**

We apply the same *de novo* standard of review employed for a motion to dismiss under Rule 12(b)(6) to a district court's decision regarding a motion for judgment on the pleadings. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). "'For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must

plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

## A.

McKenna appeals the district court's dismissal of his substantive due process claim. "[T]he termination of public employment does not constitute a denial of substantive due process" unless there has been an "infringement of some 'fundamental' right." *Young v. Twp. of Green Oak*, 471 F.3d 674, 684 (6th Cir. 2006) (quoting *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1351 (6th Cir. 1992)) (internal quotation marks omitted); *see also Perry v. McGinnis*, 209 F.3d 597, 609 (6th Cir. 2000) (holding that even when a public employee is discharged for reasons that shock the conscience, the violation of a fundamental right is still "necessary"). Here, McKenna only alleges that he was denied his right to tenured employment. He does not plead a violation of a fundamental right. *See Sutton*, 958 F.2d at 1350 ("[W]e conclude that plaintiffs' state-created right to tenured employment lacks substantive due process protection."); *cf. Bell v. Ohio State Univ.*, 351 F.3d 240, 251 (6th Cir. 2003) ("Where . . . there is no equal protection violation, we can see no basis for finding that a medical student's interest in continuing her medical school education is protected by substantive due process."). Therefore, McKenna's substantive due process claim cannot survive defendants' motion for judgment on the pleadings.

## B.

McKenna also challenges the district court's conclusion that it "disposed of all [McKenna's] claims against [Bowling Green] and the Board of Trustees." McKenna acknowledges that he cannot seek monetary relief against either Bowing Green or its Board of

Trustees, but asks this court to remand to allow his claim for injunctive relief to proceed against both entities. We decline to do so for two reasons.

First, neither defendant is a "person" subject to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) (holding that "a State is not a person within the meaning of § 1983"). When an action is brought against a public institution, as it is here, the question is whether the institution can be characterized as an arm or alter ego of the state. *See Hall v. Med. Coll. of Ohio at Toledo*, 742 F.2d 299, 301 (6th Cir. 1984). McKenna does not challenge the district court's holding that Bowling Green is an arm of the state. *See* Ohio Rev. Code § 3345.011 (recognizing Bowling Green as a "state university"); *Hall*, 742 F.2d at 301–07 (holding that Medical College of Ohio at Toledo is an arm of the state). It follows that the Board of Trustees, a corporate body charged with conducting University affairs, is also an arm of the state. Therefore, having sued only the University and its Board of Trustees, rather than the individual trustees, McKenna has failed to state a claim against a person covered by § 1983.[1] *See, e.g.*, *Gaby v. Bd. of Trs. of Cmty. Technical Colls.*, 348 F.3d 62, 63 (2d Cir. 2003) (holding that "boards of trustees of state colleges and universities are not subject to suit under § 1983"); *McLaughlin v. Bd. of Trs. of State Colls. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000) (same).

Additionally, because Bowling Green and its Board of Trustees are arms of the state, Eleventh Amendment immunity also attaches. *See Hall*, 742 F.2d at 301–07. Alluding to *Ex parte Young*, 209 U.S. 123 (1908), McKenna argues that the Eleventh Amendment bar does not apply to his claims for injunctive relief. Under *Ex parte Young*, "a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the

---

[1] McKenna is correct that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983." *See Will*, 491 U.S. at 71 n.10. The problem is not the type of relief McKenna requests, but the fact that McKenna failed to sue "state officials."

requirements of federal law." *Quern v. Jordan*, 440 U.S. 332, 337 (1979). But *Ex parte Young* does not apply because Bowling Green and its Board of Trustees are not state officials. *See Westside Mothers v. Haveman*, 289 F.3d 852, 860 (6th Cir. 2002).

## III.

Lastly, McKenna appeals the district court's grant of summary judgment in favor of Morgan-Russell, in his individual capacity, on McKenna's procedural due process claim. We review a district court's grant of summary judgment *de novo*. *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 453 (6th Cir. 2001). Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding motions for summary judgment, we draw all reasonable inferences in favor of the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The ultimate inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

In order to establish a procedural due process claim, McKenna "'must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest.'" *O'Neill v. Louisville/Jefferson Cnty. Metro Gov't*, 662 F.3d 723, 732 (6th Cir. 2011) (quoting *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009)). It is undisputed that McKenna had a protected property interest and that he was deprived of this interest. The only element of his claim at issue is whether McKenna was afforded the process that he was due.

**A.**

McKenna argues that he did not receive a constitutionally valid pre-termination hearing. The Supreme Court has held that the state must provide a pre-termination hearing before firing a public for-cause employee, but that this hearing "need not be elaborate." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–46 (1985). In this context, a pre-termination hearing "should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46. Specifically, McKenna was entitled to oral or written notice of the charges against him, an explanation of Bowling Green's evidence, and an opportunity to present his side of the story to Bowling Green. *See Farhat v. Jopke*, 370 F.3d 580, 595 (6th Cir. 2004) (quoting *Buckner v. City of Highland Park*, 901 F.2d 491, 494 (6th Cir. 1990)).

We agree with the district court that McKenna was given all the pre-termination process he was due.[2] Morgan-Russell sent McKenna three letters notifying him of student complaints and the resulting departmental concern about his conduct during the summer 2009 course. Morgan-Russell then impaneled a committee to investigate the student complaints. This committee met three times. McKenna appeared in front of the committee and spoke to them for approximately an hour. He also provided the panel with 321 emails in support of his case. Although he was not given a formal evidentiary hearing, McKenna was given an opportunity to

---

[2] The district court alternatively dismissed McKenna's claim because it found that McKenna did not plead a pre-termination due process violation. However, McKenna's complaint does not distinguish between pre- or post-termination hearings. Instead, he broadly alleges that his "termination was unlawful as Defendants deprived [him], a tenured university professor, of certain constitutionally protected rights . . . when one or all of Defendants discharged Plaintiff without providing him with a hearing in which he was informed of the grounds of his dismissal and given the opportunity to challenge the sufficiency of those grounds." Because McKenna's complaint can fairly be read to include a challenge to both pre- and post-termination hearings, we reach the merits.

be heard and that is all the process required at this stage. *See Brickner v. Voinovich*, 977 F.2d 235, 237 (6th Cir. 1992) ("These essential elements do not require a full evidentiary, adjudicatory hearing, which is the primary function of a posttermination proceeding[]."); *Loudermill v. Cleveland Bd. of Educ.*, 844 F.2d 304, 311 (6th Cir. 1988) (holding that an informal, in-office meeting between an employee and his supervisor satisfied the constitutional requirements for pre-termination due process).

McKenna's main argument on appeal is that the pre-termination panel was not "legitimate" because it was conducted according to the terms of the Addendum, which McKenna argues expired at the end of the spring 2009 semester. This is irrelevant to the procedural due process analysis. We do not ask what procedures an employee was or was not entitled to under state law, local ordinances, or, in this case, a university charter. *See Chandler v. Vill. of Chagrin Falls*, 296 F. App'x 463, 470 (6th Cir. 2008). Rather, we look at what process the plaintiff actually received and ask whether it was sufficient to satisfy the Constitution. *See id.* In this case, the pre-termination process was sufficient.

**B.**

We turn now to McKenna's arguments concerning the post-termination process. Procedural due process requires "'notice and opportunity for hearing'" that is "'appropriate to the nature of the case.'" *See Brickner*, 977 F.2d at 237 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). In this case, McKenna argues that both aspects of his post-termination procedures were constitutionally inadequate.

As an initial matter, McKenna claims that he received inadequate notice of the charges against him because the memoranda only charged that he had violated the terms of the Addendum; yet at the formal grievance hearing, Morgan-Russell argued that McKenna's

behavior also violated the general provisions of Bowling Green's Charter. We hold that the multiple notices provided to McKenna were reasonably calculated, under the circumstances, to apprise him of the pendency of the action and to afford him an opportunity to present his objections. *See Morrison v. Warren*, 375 F.3d 468, 475 (6th Cir. 2004). Before McKenna's termination, Morgan-Russell sent McKenna three memoranda describing the alleged misconduct (McKenna's handling of the online course during the summer of 2009) and the basis for dismissing McKenna because of that misconduct (the Addendum). After the informal committee hearing, Morgan-Russell sent another memorandum detailing the same grounds for McKenna's dismissal—nothing had changed. At the hearing, Morgan-Russell continued to point to the same troubling behavior. And the report of the Hearing Board recounted the same misconduct. Additionally, McKenna was on notice that Morgan-Russell intended to introduce progressive discipline evidence over a year before the hearing.

We acknowledge that none of the written notices mention the University's authority to act on McKenna's misconduct outside of the Addendum. But it does not necessarily follow from this fact that McKenna's due process rights were violated. In this context, the touchstone of the notice requirement is that an employer must notify the employee of the misconduct alleged so that the employee can present his side of the story. *Cf. McDaniel v. Princeton City Sch. Dist. Bd. of Educ.*, 45 F. App'x 354, 358 (6th Cir. 2002). It is undisputed that Morgan-Russell notified McKenna of all alleged misconduct. Whether Morgan-Russell comprehensively discussed all legal bases allowing the University to fire McKenna for this misconduct is irrelevant to the question. We find no constitutional deficiency with the notice McKenna received.

McKenna also claims that his post-termination hearing violated his due process rights. We have held that "[w]hat form of hearing is 'appropriate' depends in large part upon the timing

of the hearing, *i.e.*, whether it is given *before* or *after* the deprivation occurs." *Brickner*, 977 F.2d at 237. When a public employee only receives an "abbreviated pre-termination hearing," then, at a minimum, he should be "permitted to attend the [post-termination] hearing, to have the assistance of counsel, to call witnesses and produce evidence on his own behalf, and to know and have an opportunity to challenge the evidence against him." *Rodgers v. 36th Dist. Court*, 529 F. App'x 642, 649 (6th Cir. 2013) (quoting *Carter v. W. Reserve Psychiatric Habilitation Ctr.*, 767 F.2d 270, 273 (6th Cir. 1985)). Here, McKenna alleges five problems with his post-termination hearing: (1) Morgan-Russell submitted evidence of McKenna's conduct prior to the summer 2009 course; (2) Morgan-Russell sought and obtained dismissal of a Hearing Board member through *ex parte* communication; (3) the hearing was delayed for two years; (4) the Charter's provisions for the hearing, including the burden of proof, its allowance for counsel, and the time limits, disadvantaged McKenna; and (5) the Hearing Board's decision was contrary to the substantial weight of the evidence.

Morgan-Russell asserts a qualified-immunity defense to these claims. The doctrine of qualified immunity is a defense to § 1983 claims. *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010). There are two general steps to a qualified immunity analysis. The court must determine whether "the facts alleged show the officer's conduct violated a constitutional right" and whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001). Under *Pearson v. Callahan*, the court may address either question first. 555 U.S. 223, 236 (2009). "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Binay*, 601 F.3d at 647 (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

McKenna's procedural due process claim fails at step one; Morgan-Russell's conduct did not violate a constitutional right. To be held liable under § 1983, a plaintiff must establish that "each Government-official defendant, through the official's own individuals actions, has violated the Constitution." *Aschroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Simply put, to establish liability and to overcome a qualified immunity defense, an individual must show that his or her *own* rights were violated, and that the violation was committed *personally* by the defendant." *Robertson v. Lucas*, No. 12-3877, slip op. at 10 (6th Cir. 2014); *see also Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004) ("The first question for the Court is whether [defendant], acting under the color of state law, committed a constitutional violation. A claimed constitutional violation must be based upon active unconstitutional behavior.").

Here, McKenna concedes that Morgan-Russell was not responsible for most of the alleged due process violations, including the two-year delay, the "overall shortcomings" in Bowling Green's Grievance Procedures, and the sufficiency of the Hearing Board's decision. McKenna also concedes that he is alleging a due process violation stemming from the *University's admission* of allegedly prejudicial evidence at the grievance hearing. The hearing was adversarial in nature, with McKenna as the petitioner and Morgan-Russell as the respondent. A due process violation does not stem merely from Morgan-Russell's seeking admission of evidence during this adversarial process. Rather, as McKenna admits, the violation, if any, stems from the Hearing Board's admission and consideration of the evidence.

Thus, the only conduct arguably committed by Morgan-Russell involving the post-termination hearing was his *ex parte* communication about the Hearing Board member.[3] McKenna claims that Morgan-Russell's *ex parte* email challenging the seating of a Hearing

---

[3] Although, like with the admission of evidence, it was ultimately the University that decided to remove the Hearing Board member.

Board member biased the Hearing Board and tainted the proceedings. However, McKenna offers no support for his allegation of bias other than the *ex parte* email itself. *Cf. C.Y. ex rel. Antone v. Lakeview Pub. Schs.*, No. 13-1791, 2014 WL 541096, at \*4 (6th Cir. 2014) ("[A]bsent a showing of bias, it does not violate due process for school administrators to communicate *ex parte* with the Board . . . ." (emphasis added)). The email alone does not support an inference of bias. Morgan-Russell did not submit any additional evidence to the Hearing Board and it is clear that the merits of the case were not discussed. Furthermore, McKenna does not offer any evidence that the replacement Hearing Board member was biased against him or that the overall composition of the Hearing Board was unbalanced in light of Clark's removal. Therefore, there is no genuine issue of material fact and summary judgment is appropriate.

## IV.

For the above reasons, we affirm the district court's dismissal of McKenna's substantive due process claim against all defendants; affirm the district court's dismissal of McKenna's procedural due process claim against Bowling Green and its Board of Trustees; and affirm the district court's grant of summary judgment to Morgan-Russell in his individual capacity on McKenna's procedural due process claim.